```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------X

Stadium Motors, Inc., d/b/a Popular Kia;
Eurasian Motors, Inc., d/b/a Auto Central;
Omni Auto Group, Inc., d/b/a Brooklyn             CV-07-3120
Dodge; Vanguard Auto Group, Inc., d/b/a           (CPS)
Popular Ford; Baron Auto Mall, Inc., d/b/a
Driveworld, f/d/b/a Baron Kia; Tri-County
Motors, Inc. d/b/a Driveworld; Lester Wu,
individually and as principal of Stadium
Motors, Eurasian Motors, Omni Auto Group,
Vanguard Auto Group, and Baron Auto Mall;         MEMORANDUM
Vladimir Zanan, individually and as               OPINION AND
principal of Stadium Motors, Eurasian             ORDER
Motors, Omni Auto Group, Vanguard Auto Group,
Baron Auto Mall, and Tri-County Motors; and
Raymond Lahey, individually and as principal
of Tri-County Motors and Baron Auto City,
d/b/a Baron Auto Mall,

                              Plaintiffs,

     - against -

New York City Department of Consumer Affairs,
and Jonathan Mintz, Commissioner of the New
York City Department of Consumer Affairs,

                              Defendants.
-----------------------------------------X
```

SIFTON, Senior Judge.

Plaintiffs Stadium Motors, Inc., d/b/a Popular Kia; Eurasian Motors, Inc., d/b/a Auto Central; Omni Auto Group, Inc., d/b/a Brooklyn Dodge; Vanguard Auto Group, Inc., d/b/a Popular Ford; Baron Auto Mall, Inc., d/b/a Driveworld, f/d/b/a Baron Kia; Tri-County Motors, Inc. d/b/a Driveworld; Lester Wu, individually and as principal of Stadium Motors, Eurasian Motors, Omni Auto Group, Vanguard Auto Group, and Baron Auto Mall; Vladimir Zanan,

-2-

individually and as principal of Stadium Motors, Eurasian Motors, Omni Auto Group, Vanguard Auto Group, Baron Auto Mall, and Tri-County Motors; and Raymond Lahey, individually and as principal of Tri-County Motors and Baron Auto City, d/b/a Baron Auto Mall commenced this action against defendants New York City Department of Consumer Affairs ("the Department") and Jonathan Mintz, Commissioner of the New York City Department of Consumer Affairs, on July 27, 2007.  Plaintiffs allege that defendants, who have scheduled a hearing to determine whether plaintiffs have violated New York City law, are seeking to fine and/or suspend or revoke their licenses in violation of their due process rights to a fair trial under the Fifth and Fourteenth Amendments of the Constitution of the United States.  Plaintiffs seek a declaratory judgment, pursuant to 28 U.S.C. § 2201, to the effect that defendants have violated plaintiffs' due process rights, and preliminary and permanent injunctions enjoining defendants from pursuing their claims against plaintiffs and taking any steps to suspend, revoke or otherwise interfere with plaintiffs' licenses.[1]  Now before this Court is plaintiffs' motion for a

---

[1] Plaintiffs' request for a permanent injunction is listed as claim for relief pursuant to 42 U.S.C. § 1983 and also as an independent claim for relief, for which no statutory basis is cited.  Since § 1983 is the sole statutory basis cited for such injunctive relief in the complaint, I will construe both claims as being made under § 1983. *See* 42 U.S.C. § 1983 (person acting under the color of law who "subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in . . . suit in equity, or other proper proceeding for redress . . . ."). Though plaintiffs also do not specify the statutory basis for the request for a preliminary injunction, such claims are properly made pursuant to Fed. R.

-3-

preliminary injunction to enjoin the pending hearing before the Department of Consumer Affairs, scheduled to take place on or around September 7, 2007. For the reasons set forth below, plaintiffs' motion is denied.

## Background

What follows sets forth the findings of fact and conclusions of law on the basis of which this motion is denied, as required by Fed. R. Civ. P. 65.[2]

The plaintiff corporations in this action are organized under the laws of the state of New York and are licensed by the Department of Consumer Affairs as second-hand automobile dealers. Individual plaintiffs are residents of the state of New York and are principals in the plaintiff corporations.

The Department began an investigation of plaintiffs in mid-2006, and between the initiation of the investigation and November 2006, plaintiffs cooperated in this investigation.[3] On November 22, 2006, The Department's Assistant Commissioner for

---

Civ. P. 65(a).

[2] Since there are no substantial factual disputes, no hearing in necessary. *See Davis v. New York City Housing Authority,* 166 F.3d 432, 437-38 (2d Cir. 1999) (motions for preliminary injunction should be resolved on the basis of oral testimony when there are disputed issues of fact).

[3] According to plaintiffs, the original investigation did not target the plaintiffs but rather focused on a direct mail marketing company which plaintiffs used to send out scratch-off sweepstakes games, discussed below. The Department later informed plaintiffs that there were 18 consumer complaints lodged against them. Plaintiffs made an effort to settle the complaints as late as November 9, 2006. At some point, the Department began investigating additional consumer complaints against plaintiffs but did not inform plaintiffs of that fact until the Notice of Hearing was filed.

-4-

Litigation and Mediation, Susan Kassapian, Esq., who is responsible for the Department's investigation of plaintiffs, entered plaintiff Tri-County's dealership posing as a customer and negotiated the purchase of a used car.[4] According to plaintiffs, in an effort to "entrap" Tri-County, Kassapian then stated that she was in a hurry and requested that the finance manager of Tri-County allow her to execute a partially blank contract of sale before he had the chance to fill in all the numbers.[5] The finance manager refused this request and, according to plaintiffs, Kassapian was unable to discover any "direct wrongdoing."[6]

---

[4] Due to plaintiffs' previous cooperation, Kassapian was aware at that time that Tri-County was represented by counsel. According to the Department, Kassapian went to Tri-County after receiving one of the scratch-off games in her home mail.

[5] According to plaintiffs, Kassapian believed that such improper conduct was generally engaged in by plaintiffs.

[6] Plaintiffs, in their reply brief, also describe another incident which they describe as "unbelievable" and as indicative of the fact that the Department's honesty and integrity should not be presumed. On August 2, 2007, according to plaintiffs, an inspector from the Department arrived at plaintiff Stadium Motors and said he was writing up the dealer due to an expired license. After being informed that the paperwork had been filed, the inspector called the Department and confirmed that there was no problem with the license. The inspector then asked where the "notice to customers" was. The Sales Manager looked around and found a sign on the wall entitled "Notice to Our Customers" and informed the inspector, who told the Sales Manager that it was too late and that he had come to "write you up." The inspector refused to note on his report that he saw the sign but said he would say so when the dealership came for a hearing. He then asked for a "buyer's order form" and asked the Sales Manager to show him where the DCA license number was on the form. The Sales Manager showed him a number but the inspector told it was not the right one and began to write him up for that violation as well. At that point the General Manager came in and showed the inspector that the license number was on the front of the form in red ink. The inspector initially accused the General Manager of hand-writing the number in but the General Manager pointed out that it was printed. The inspector refused to delete the charge from his violation form and instead noted that he had attached a copy of the form to his report and that the number was listed in red. As a result

-5-

On November 29, 2006, plaintiffs' attorneys sent a letter to the Department requesting that Kassapian be removed from all matters involving their clients, due to her allegedly unprofessional actions.[7] This request was denied, though the Department did assign another attorney to be present along with Kassapian during discussions and proceedings related to the matter under investigation.

On April 9, 2007, the Department issued a Notice of Hearing ("NOH") which charged plaintiffs with violating the New York City Consumer Protection Law and the Licence Enforcement Law in connection with certain sales promotions conducted by plaintiffs.[8] Among other things, the Department alleges that the plaintiffs improperly used scratch-off sweepstakes direct mail promotions which falsely stated that individuals were guaranteed winners of free cars,[9] and that plaintiffs also engaged in

---

of these alleged violations, the dealership is scheduled to appear before the Department's Adjudication Division on October 24, 2007; that hearing is unrelated to the hearing at issue in this action.

[7] In sum, plaintiffs argued that Kassapian should be removed since she had violated the rules of professional responsibility by contacting a party represented by an attorney and because her conduct was deceitful and designed to misrepresent. *See* 22 NY ADC 1200.3, 1200.35; Model Code of Professional Responsibility EC 7-14.

[8] The specific rules and statutes which plaintiffs are accused of violating are listed in the NOH, submitted by defendants.

[9] According to the Department, consumers were sometimes tricked into buying cars they thought they had won as part of the sweepstakes. According to plaintiffs, the Department is aware the plaintiffs relied on a well-known national direct mail marketing company which represented that the promotion was appropriate and conducted throughout the industry.

-6-

improper acts involving consumer contracts and financing agreements, such as having consumers sign partially blank agreements which plaintiffs later filled in with higher prices than those agreed to. The Department is seeking fines, revocation of plaintiffs' licenses, and rescission of contracts made with consumers. According to plaintiffs, "numerous" complaints[10] which form the basis of this NOH were improperly filed with the Department, depriving the department of jurisdiction, though the Department plans to proceed to try those charges regardless. Further, according to plaintiffs, 70 complaints which the Department intends to use in support of the NOH have been settled, closed or otherwise deemed by the Department to be without merit, while another 10 complaints are barred by the applicable statute of limitations.[11]

On April 10, 2007, Commissioner Mintz held a press conference during which he identified the corporate plaintiffs by name and stated that the "pattern of abuses we've alleged against

---

[10] Defendants state that the case "stems from over 200 consumer complaints of deceptive sales practices." These complaints were filed with the Department, the New York State Attorney General, and the Better Business Bureau of New York.

[11] Plaintiffs have provided 7 samples of claims which were released, withdrawn or deemed invalid. However, plaintiffs do not contend that there are no valid, properly filed complaints still pending, nor have plaintiffs argued that there is any due process violation in the Department's planned use of the documents in support of their prosecution of plaintiffs.
Plaintiffs also state that 40 of the complaints "only involve buyers' remorse," another 44 "involve issues such as mechanical problems," and "[n]umerous other complaints involve consumers who failed to recognize that the interest on a car loan adds to the cost of the car."

-7-

this auto group are exactly what consumers fear most when buying a car from a dealer.  Such practices are outrageous.  If these dealers don't agree to pay back consumers and dramatically overhaul their business practices, we'll move to shut them down." The Commissioner was also quoted in the New York Post as saying "There was a lot of fast talking when they walked into the dealerships" and on the NY1 website as saying "When you fill in a contract after a consumer is [sic] left with additional costly items, you're not doing that by accident.  In my opinion, that's illegal and we're going after them with everything we've got."

A hearing pursuant to the NOH was originally scheduled for April 10, 2007.[12]  That hearing was subsequently rescheduled to

---

[12] Administrative hearings for the Department of Consumer Affairs "shall be presided over by a Hearing Officer" who will "make and file recommended decisions and orders for approval by the Commissioner, the Director of Adjudication or any other person designated by the Commissioner, or to make final decisions and orders if designated by the Commissioner to do so." 6 RCNY § 6-34.  The Hearing Officer's "findings of fact are proposed findings of facts and decisions are recommended decisions.  The Commissioner of the Department of Consumer Affairs shall have authority to adopt, modify or reject all findings of fact or decisions." *Id*.  Should a party by be "aggrieved by the decision and order," he or she "may within thirty days from the date of the decision, file a written appeal with the Director of Adjudication who serves as the designee of the Commissioner." 6 RCNY § 6-40. *See also* NYC Code § 20-104:

> d. The commissioner or the commissioner's designee shall be authorized to conduct investigations, to issue subpoenas, to receive evidence, to hear complaints regarding activities for which a license is or may be required, to take depositions on due notice, to serve interrogatories, to hold public and private hearings upon due notice, to take testimony and to promulgate, amend and modify procedures and practices governing such proceedings.
>
> e. (1) The commissioner shall be authorized, upon due notice and hearing, to suspend, revoke or cancel any license issued by him or her in accordance with the provisions of chapter two and to impose or institute fines or civil penalties for the violation of (i) any of the provisions of chapter two of this title and regulations and

-8-

July 30, 2007, to be held before Administrative Law Judge ("ALJ")Bruce Dennis.[13]

Plaintiffs made another motion to disqualify Kassapian on May 3, 2007.[14]  On  June 26, 2007, ALJ Dennis denied the motion for reasons stated on the record.

After plaintiffs filed the present complaint and a motion for a temporary restraining order, defendants agreed to again postpone the hearing date until September 7, 2007.

## Discussion

Plaintiffs now move for a preliminary injunction to enjoin the pending administrative hearing, currently scheduled for September 7, 2007, on the ground that the Department's bias will prevent plaintiffs from receiving a fair hearing and will

---

rules promulgated under chapter two of this title and (ii) any of the provisions of any other law, rule or regulation, the enforcement of which is within the jurisdiction of the department including but not limited to subchapter one of chapter five of this title (the consumer protection law) subchapter two of chapter five (the truth in-pricing-law); provided that such violation is committed in the course of and is related to the conduct of the business, trade or occupation which is required to be licensed pursuant to chapter two of this title.

[13] Amended Notices of Hearing were filed on July 18, 2007 and July 23, 2007.

[14] Plaintiffs renewed the previous arguments and also argued that Kassapian should be disqualified since she might be called as a witness by plaintiffs to prove that there was no wrongdoing. See 22 NY ADC 1200.21. Plaintiffs noted that when they requested an adjournment of the original hearing date, Kassapian stated that if they wanted that adjournment, they would be required to put $1 million into escrow.  According to plaintiffs, ths was an unreasonable request and evidence that Kassapian "has compromised her duty as a government attorney to bring about reasonable settlements and results."

-9-

accordingly deny them a property right without due process of law.[15]  Specifically, plaintiffs argue that the Commissioner, as evidenced by his public statements, has already prejudged the facts of case and concluded that plaintiffs have violated city ordinances and regulations and that he plans to shut them down, regardless of whatever facts may come out at a hearing, if they do not agree to his terms.[16]  Plaintiffs further argue that given the fact that Kassapian is a "senior staff member" of the Department and is serving as the investigator and prosecutor, the Commissioner is effectively acting as both judge and prosecutor in this matter.[17]

---

[15] Where a constitutionally protected property interest exists, procedures utilized to reduce or terminate the protected property interest must comport with the constitutional requirement of due process.  Due process requires "a meaningful opportunity to be heard." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1967).

[16] *See Daye v. Attorney General of State of N.Y.,* 696 F.2d 186, 196 (2d Cir. 1982) ("Under the Due Process Clause there is a well developed right, established in a long line of cases, to a trial before an unbiased judge.  The fundamental nature of this right is demonstrated by the fact that not even the appearance of bias is tolerated.  Fairness of course requires an absence of actual bias in the trial of cases.") (internal citations and quotations omitted); *see also New York State Inspection, Sec. and Law Enforcement Employees, Dist. Council 82, AFSCME, AFL-CIO v. New York State Public Employment Relations Bd.*, 629 F.Supp. 33, 45 (N.D.N.Y. 1984) ("[I]t is constitutionally unacceptable for a decisionmaker to announce in advance his position on adjudicative facts."); *1616 Second Ave. Restaurant, Inc. v. New York State Liquor Authority,* 550 N.E.2d 910, 912, 162 (N.Y. 1990) ("[D]isqualification [of an administrative official] may be required for prejudgment of specific facts at issue in an adjudicatory proceeding.").

[17] *See In re Murchison*, 349 U.S. 133, 137 (1955) ("Fair trials are too important a part of our free society to let prosecuting judges be trial judges of the charges they prefer."); *but see Withrow v. Larkin*, 421 U.S. 35 (1975) ("The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication . . . . must overcome a presumption of honesty and integrity . . . [sufficient to show] a risk of actual bias or prejudgment . . . ."); *Rutigliano Paper Stock, Inc. v. U.S. General Services Admin.,* 967 F.Supp. 757, 769 (E.D.N.Y. 1997) (Citing *Withrow* and noting that "the Supreme

-10-

Pursuant to Federal Rule of Civil Procedure 65(a), a preliminary injunction is appropriate if the movant shows (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Gold v. Feinberg*, 101 F.3d 796, 800 (2d Cir. 1996).

Assuming, as plaintiffs contend, that they would be irreparably harmed by proceeding before a decisionmaker who has prejudged the facts of the case,[18] it is not likely that they will be able to establish that that is the situation currently faced by plaintiffs. "The test for disqualification has been succinctly stated as being whether 'a disinterested observer may conclude that [the agency] has in some measure adjudged the facts

---

Court has indicated that a combination of functions within an agency does not constitute a due process violation.").

[18] *See United Church of the Medical Center v. Medical Center Com'n*, 689 F.2d 693, 701 (7th Cir. 1982) ("Submission to a fatally biased decisionmaking process is in itself a constitutional injury sufficient to warrant injunctive relief, where irreparable injury will follow in the due course of events, even though the party charged is to be deprived of nothing until the completion of the proceedings . . . . [The] injury has already occurred, and is therefore sufficiently 'immediate' to warrant injunctive relief . . . . [and] judicial review of biased state administrative proceedings, even if on a de novo basis, does not obviate the need for injunctive relief.") (citing *Gibson v. Berryhill*, 411 U.S. 564 (1973)).
    To be clear, plaintiffs complaint concerns the decisionmaking process, not the deprivation of their licenses.  While the Commissioner, under NYC Code § 20-104(e), *supra* note 12, is the one to act on the determination of the hearing officer and any reviewing officer, the question on this application is whether the decisionmaking process is biased.  For the reasons set forth below, I conclude that it is not likely that plaintiffs will succeed on that claim.

-11-

as well as the law of a particular case in advance of hearing it.'" *Cinderella Career & Finishing Schools, Inc. v. F.T.C.*, 425 F.2d 583, 591 (D.C. Cir. 1970) (quoting *Gilligan, Will & Co. v. SEC*, 267 F.2d 461, 469 (2d Cir.)).  In the present case, it is unlikely that plaintiffs will be able to show that ALJ Dennis is anything other than an impartial arbiter or that the ALJ will be influenced by the Commissioner's comments.[19]  On the evidence before me, the process of reviewing and approving the ALJ's recommendation within the Department does not involve the Commissioner in the decisionmaking process.  According to the affidavit from Nancy Schindler, the Department's Deputy Director of Adjudication,[20] she has been appointed by the Commissioner to "review and either approve or reject the recommended decisions of the Hearing Officers."  According to Schindler, her decisions are not subject to approval by the Commissioner and are not provided to the Commissioner until after they have issued.  In the event a party objects to her decision, the party is able to appeal to the Director of Adjudication, whose decisions are also not subject to the Commissioner's approval and are not provided to the Commissioner until after they have issued.  In the fifteen years

---

[19] Indeed, plaintiffs argued the motion to disqualify Kassapian before ALJ Dennis and have not complained of bias in that decision.  Since the ALJ is required to file a written opinion, there will be a record for a court to evaluate after the fact if plaintiffs feel he demonstrates bias during the hearing. *See* 6 RCNY § 6-34 (ALJ required to file written opinion setting forth findings of fact and conclusions of law).

[20] The substance of Schindler's affidavit is not disputed.

-12-

Schindler has been with the Department, she is unaware of a single case in which an ALJ's recommendation has been submitted to the Commissioner.

Plaintiffs argue that "it is quite naive to think that Commissioner's [sic] Mintz's public statements would not influence his direct subordinates." This conclusory allegation is unsupported by any evidence apart from the Commissioner's statements themselves and two incidents of alleged misconduct by his employees. The Commissioner's statements read from the perspective of a disinterested observer reflect the Commissioner's views as to the appropriate course of action with regards to the charges made in the consumer complaints if they are proved. *See Cinderella Career & Finishing Schools, Inc.*, 425 F.2d at 591. Whether taken alone or in combination with the incidents involving his subordinates,[21] the statements are not sufficient to persuade me at this stage of the proceedings that they were either meant or will be interpreted as implicit or explicit instructions to those charged with adjudicating the matter.[22] Nor have plaintiffs come forward with other evidence

---

[21] Plaintiffs do not allege, much less establish, any causal connection between the Commissioner's statements and the incidents complained of, one of which, indeed, occurred before the Commissioner's comments.

[22] Plaintiffs cite *State ex rel. Ellis v. Kelly,* for the proposition that subordinates and appointees are subject to influence from superior officers who have prejudged the facts of a case. 112 S.E.2d 641, 644 (W.Va. 1960) (due process violated when the agency Commissioner investigated violations and testified before the Deputy Commissioner since the Deputy's "actions were for the commissioner, and could not be expected to be free and independent of his influence," and, accordingly, it was as if one person acted

-13-

that the ALJ, the Deputy Director of Adjudication or the Director of Adjudication will not in this case follow their long established procedures of deciding the matter before them without reference to the Commissioner himself.[23]

Accordingly, since there is, on this record, little likelihood that plaintiffs will succeed on their claim that the decisionmaking process will be biased and since the public interest in acting on the numerous consumer complaints which have led to this proceeding clearly outweighs the plaintiffs' interests in avoiding the hearing, plaintiffs motion for a preliminary injunction is denied.[24]

---

as "investigator, prosecutor, witness and trier of the facts."). However, that case is factually distinct from this one since the hearing officer in the cited case was the Commissioner's immediate subordinate and the Commissioner himself testified at the hearing. In other cases cited by plaintiffs, courts have remedied the alleged bias of an agency official by remanding cases to the agency for additional proceedings, without any apparent concern that other agency officials would be subject to improper influence. *See Cinderella Career & Finishing Schools, Inc. v. F.T.C.*, 425 F.2d 583 (D.C. Cir. 1970) (remanding case for reconsideration by Federal Trade Commission without participation of the Chairman who had prejudged facts); *1616 Second Ave. Restaurant, Inc. v. New York State Liquor Authority,* 75 N.Y.2d 158 (N.Y. 1990) (remanding case to be heard before administrative agency board which did not include the Chairman who had prejudged facts).

[23] Although plaintiffs have stated that many of the complaints are invalid or otherwise cannot serve as the basis for sanctions against them, their lack of merit does not establish that the ALJ is incapable of resolving those questions.

[24]
> This Circuit has offered differing views on the appropriate standard for issuance of a preliminary injunction against governmental action. We have sometimes required a strong showing of entitlement to a preliminary injunction against governmental action . . . . On the other hand, we have said that the 'probability of success' standard need not always be followed merely because a movant seeks to enjoin government action.

*Time Warner Cable of New York City, a division of Time Warner Entertainment Co., L.P. v. Bloomberg L.P.,* 118 F.3d 917, 923 (2d Cir. 1997). Since this

-14-

## Conclusion

The Clerk is directed to transmit a copy of the within to all parties and the Magistrate Judge.

SO ORDERED.

Dated :    Brooklyn, New York
           August 8, 2007

                    By: /s/ Charles P. Sifton (electronically signed)
                                  United States District Judge

---

motion fails on either standard, I need not decide which applies in this case.